UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ANNETTE MARIE MAKULSKI,          )
                                 )
            Plaintiff,           )
                                 )
v.                               )          No. 3:17-CV-128-HBG
                                 )
NANCY A. BERRYHILL,              )
Deputy Commissioner for Operations,   )
performing the duties and functions not   )
reserved to the Commissioner of Social Security,   )
                                 )
            Defendant.           )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 12].  Now before the Court is

Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 13 & 14] and

Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18].

Annette Marie Makulski ("Plaintiff") seeks judicial review of the decision of the Administrative

Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner").

For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the

Commissioner's motion.

## I.       PROCEDURAL HISTORY

On May 1, 2013, Plaintiff protectively filed an application for disability insurance benefits

and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act,

42 U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on February

14, 2013.  [Tr. 109-110, 395-402].  After her application was denied initially and upon

reconsideration, Plaintiff requested a hearing before an ALJ.  [Tr. 172].  A hearing was held on

April 9, 2015, and a second hearing on November 5, 2015. [Tr. 444-517]. On March 2, 2016, the

ALJ found that Plaintiff was not disabled. [Tr. 14-27]. The Appeals Council denied Plaintiff's

request for review [Tr. 8-11], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court

on April 5, 2017, seeking judicial review of the Commissioner's final decision under Section

405(g) of the Social Security Act. [Doc. 2]. The parties have filed competing dispositive motions,

and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 14, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3.  The claimant has the following severe impairments: chronic obstructive pulmonary disease; scoliosis; degenerative disc disease; status-post right arm fracture; hypertension; insomnia; major depressive disorder; generalized anxiety disorder; and substance abuse (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except that she can only occasionally perform postural activities. She can only frequently reach above shoulder level with her right arm. She should avoid frequent exposure to pulmonary irritants. She is able to understand, remember, and carry out simple and detailed instructions, but is limited to work that requires no interaction with

2

the public and only occasional interaction with coworkers and supervisors. She would do better in a job with few social demands among coworkers and supervisors. The claimant is limited to work that requires no more than occasional changes in the work setting.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 19, 1961 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 19-26].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

 "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly analyze the medical opinion of psychological consultative examiner, William Kenney, Ph.D. [Doc. 14 at 4-11]. Plaintiff submits that the ALJ committed a number of errors in weighing Dr. Kenney's opinion, including that the ALJ failed to acknowledge or discuss the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c), the ALJ speculated that Dr. Kenney relied on Plaintiff's subjective complaints rather than mental status examination findings, and the ALJ relied on his own lay opinion in assessing Dr. Kenney's findings. [*Id.* at 4, 8-11]. As a result, Plaintiff contends that the ALJ committed reversible error as the functional limitations rendered by Dr. Kenney establish that Plaintiff is disabled. [*Id.* at 6-7].

On September 17, 2013, Plaintiff presented to Dr. Kenney for a clinical interview and mental status exam. [Tr. 336-38]. Plaintiff reported a history of no formal mental health treatment, past issues with alcohol and drugs, and long-term problems with anxiety and panic attacks. [Tr. 336, 338]. Plaintiff complained that she slept a lot, had no energy, felt worthless, and experienced crying spells. [Tr. 338]. She described a minimal level of independence, adaptability, sustainability, and effectiveness as she does not dress every day, she will help change the sheets on the bed once every three weeks, she showers once a week, she does not perform household chores except fix simple meals and occasionally wash dishes, she does not have any friends or hobbies but does have contact with her husband's friends, and she reads and watches some television. [Tr. 337]. On mental status exam, Plaintiff's memory was fair and her affect somewhat restricted. [Tr. 337-38].

Dr. Kenney's diagnostic impression included major depression and generalized anxiety disorder with agoraphobic features. [Tr. 338]. As to Plaintiff's ability to do work-related activities, Dr. Kenney assessed the following limitations: Plaintiff is mildly limited in her ability to understand and remember; she is moderately limited in her ability to concentrate and persist; she is moderately-to-markedly limited "at this time" in social interaction; and she is moderately-to-markedly limited in adaption. [*Id.*].

In the disability determination, the ALJ discussed Dr. Kenney's consultative examination and the sparse mental health treatment that followed. [Tr. 22-25]. Specifically, after Plaintiff was seen by Dr. Kenney, Plaintiff established mental health treatment with Cherokee Health Systems in December 2014, almost two years after Plaintiff's alleged onset date. [Tr. 22, 24]. An intake evaluation was completed, at which time Plaintiff complained of depressed mood, anhedonia, irritability, lack of motivation, and sleep and appetite disturbances. [Tr. 24, 353-55]. Plaintiff reported she drank a six-pack of beer daily, exhibited slow motor behavior, slow speech, a depressed and irritable mood, but demonstrated normal thought process, intact memory, fair attention and concentration, and intact insight and judgment. [Tr. 24, 353-54]. Rebecca Trupe, Ph.D., diagnosed Plaintiff with major depression, agoraphobia with panic disorder, and alcohol dependence. [Tr. 24, 356].

Plaintiff returned to see Dr. Trupe in February 2015, claiming that was the earliest available appointment. [Tr. 24, 351]. Dr. Trupe noted Plaintiff's assertion to be incorrect. [*Id.*]. Plaintiff reported continued daily use of alcohol and illicit use of Xanax. [*Id.*]. Dr. Trupe attempted to give Plaintiff detox information, but Plaintiff refused explaining, "she does not intend to go to rehab" and "that Xanax is the only thing that works for her panic attacks." [*Id.*]. Plaintiff was also advised that Cherokee Health Systems does not provide documentation regarding disability status which

visibly frustrated Plaintiff.  [*Id.*].  Plaintiff returned the following month with a "strong odor of alcohol," though she denied drinking, and continued to express anger with her medical providers "for not helping her" obtain disability.  [Tr. 22, 367].  When Dr. Trupe advised that "obtaining disability is not an appropriate therapy goal" but that "therapy is a place to help [Plaintiff] work towards making active and positive changes in her life,"  Plaintiff became "verbally abusive, cursing out the provider, aggressive, and threw a dirty Kleenex on desk."  [Tr. 22, 367, 385].  Plaintiff was advised she needed to leave.  [Tr. 22, 367].  She did not return for any follow-up treatment thereafter, and her file was closed in September 2015.  [Tr. 22, 386].

The ALJ concluded that Plaintiff's allegations regarding depression and anxiety were inconsistent with the lack of treatment received, and that the record suggested Plaintiff was more interested in obtaining disability benefits than receiving help.  [Tr. 22-23].  The ALJ found that the lack of formal mental health treatment until months after Plaintiff applied for benefits "diminishes her credibility with respect to her depressive symptoms, as one would expect that the claimant would seek help if she genuinely felt that her mental condition was interfering with her functioning to the extent she alleged."  [Tr. 24].  The ALJ then assigned "partial weight" to Dr. Kenney's opinion, finding that the restrictions opined were based primarily on Plaintiff's subjective allegations, rather than mental status examination evidence, and that Plaintiff's lack of mental health treatment, her credibility issues, and the lack of significant mental status examination findings within the record all suggested that Plaintiff was not as limited as she alleged.  [Tr. 25].

Before discussing the merits of Plaintiff's allegations, the Court addresses that standard by which an opinion from a one-time consultative examiner is weighed.  While Plaintiff submits that "good reason" must be given, [Doc. 14 at 4, 8], the Court finds that good reason need only be given in explaining the weight assigned to a "treating source's" opinion.  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *see Perry v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) ("An ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who, like Dr. Pickering, have examined but not treated a claimant."). In fact, opinions from one-time consultative examiners are not due any special degree of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Unlike opinions from treating sources which are assessed for controlling weight, opinions from nontreating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

Plaintiff argues that the ALJ did not acknowledge any of the regulatory balancing factors, including that Dr. Kenney was an examining source or his specialization as a licensed psychologist contracted by the Social Security Administration to perform consultative exams. [Doc. 14 at 8-9]. But nothing within 20 C.F.R. §§ 404.1527(c) and 416.927(c) mandates that every factor be explicitly addressed. *See McClain-Nelson v. Comm'r of Soc. Sec.*, No. 12-14490, 2014 WL 988910, at *7 (E.D. Mich. Mar. 13, 2014) ("[A]n ALJ is not required to discuss every factor listed in 20 C.F.R. § 404.1527[(c)].")"; *see also Buchert v. Comm'r of Soc. Sec.*, No. 3:13-CV-01418, 2014 WL 1304993, at *7 (N.D. Ohio Mar. 27, 2014) (holding same). The ALJ need only "consider" the regulatory balancing factors in determining the appropriate weight a medical opinion deserves. 20 C.F.R. §§ 404.1527(c), 416.927(c).

In the instant case, it is clear from the ALJ's decision that he considered that Dr. Kenney

was an examining source. [Tr. 22, 25]. Moreover, the ALJ considered the consistency and supportability of the opinion, concluding that Dr. Kenney's reliance on Plaintiff's subjective allegations in addition to Plaintiff's lack of treatment and credibility issues, as well as the lack of significant mental status examination findings, demonstrated that Plaintiff was not as limited as she alleged. [Tr. 25].

Plaintiff contends, however, that the ALJ's assertion that Dr. Kenney relied on Plaintiff's subjective allegations rather than mental status examination findings is purely speculative, and that at any rate, a psychological evaluation by necessity must rely, in part, on a patient's reporting in order to render a diagnosis and form an opinion. [Doc. 14 at 9-10]. The Court finds that the ALJ's reasoning is supported by substantial evidence. Because subjective allegations alone cannot establish disability, objective medical evidence—that is, medical signs and laboratory findings—must "show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. §§ 404.1529(a), 416.927(a). "Medical signs" include, "psychological abnormalities which can be observed, apart from your statements (symptoms). . . . Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated." 20 C.F.R. §§ 404.1528(b), 416.928(b).

Here, it is evident that Dr. Kenney relied more heavily on Plaintiff's subjective allegations in forming his opinion that Plaintiff has moderate-to-marked limitations in social interaction and adaption as there are no medical signs expressed in the opinion that support marked limitations. [Tr. 337-38]. The only objective evidence Plaintiff cites in support of Dr. Kenney's moderate-to-marked limitations is that Plaintiff's affect was restricted and she was teary eyed and shaking

during the examination. [Doc. 14 at 10]. The Court is not persuaded that either finding translates into marked limitations in social interactions and adaption. Importantly, the Court notes that the ALJ did not reject Dr. Kenney's opinion entirely, and the RFC incorporates moderate limitations. To be sure, the ALJ gave "significant weight" to the opinions of the nonexamining state agency psychological consultants Victor O'Bryan, Ph.D., and Robert de la Toree, Psy.D., who reviewed the record in December 2013 and February 2014, respectively, and opined that Plaintiff had moderate limitations in concentration and persistence, social interactions, and adaption which translated into the same limitations incorporated in to the RFC—namely, an ability to nonetheless understand, remember and carry out simple and detailed instructions but no interaction with the public, only occasional interaction with coworkers and supervisors, few social demands among coworkers and supervisors, and no more than occasional changes in the work setting.[1] [Tr. 20-21, 38-40, 55-57].

The Court further finds that substantial evidence supports the additional reasons given by the ALJ for assigning Dr. Kenney's opinion partial weight. The ALJ's decision discussed the lack of mental health treatment Plaintiff received until almost two years after her alleged onset date.

---

[1] Plaintiff argues that a moderate limitation in concentration and persistence, as opined by Dr. Kenney, establishes work-preclusive limitations. [Doc. 14 at 7]. Plaintiff offers no support for her assertion which the Court finds contrary to caselaw. *See Cantrell v. McMahon*, 227 F. App'x 321, 322 (5th Cir. 2007) (upholding the definition of "moderate" as "there are some moderate limitations, but the person can still perform the task satisfactorily"); *Denham v. Comm'r of Soc. Sec.*, No. 2:15-CV-2425, 2016 WL 3639894, at *7 (S.D. Ohio July 8, 2016) ("Equally clear is that in using the word 'moderate' to describe Plaintiff's level of impairment, the ALJ, like the state-agency consultants, defined the term as it is normally defined (*i.e.*, that a moderate limitation is not, of itself, work-preclusive)."), *adopted by*, No. 2:15-CV-2425, 2016 WL 4500713 (S.D. Ohio Aug. 29, 2016); *Ziggas v. Colvin*, No. 1:13-cv-87, 2014 WL 1814019, at *6 (S.D. Ohio May 6, 2014) ("[C]ourts generally agree that although the Social Security regulations do not define a 'moderate limitation,' it is commonly defined on agency forms 'as meaning that the individual is still able to function satisfactorily.'") (quoting *Lacroix v. Barnhart*, 465 F.3d 881, 888 (8th Cir. 2006)).

Of the three appointments Plaintiff did attend, examination findings were largely unremarkable and Plaintiff exhibited a greater interest in obtaining help from Dr. Trupe to receive disability benefits than treatment to improve her alleged disabling impairments. Absent evidence that a claimant's failure to seek treatment is a symptom of a mental disorder itself, which is the case here, the lack of treatment may reasonably cast doubt on the severity of a claimant's symptoms. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009); *see Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 931 (6th Cir.2007) ("The ALJ properly considered as relevant the fact that [the claimant's] medical records did not indicate that [claimant] received significant treatment . . . during the relevant time period."); Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7-8 (July 2, 1996) (stating that an "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"). Therefore, the ALJ was not obligated to defer to the opinion of Dr. Kenney whose findings were not supported or consistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4). As such, Plaintiff's allegation that the ALJ relied on his own lay analysis of the evidence in rejecting Dr. Kenney's opinion is without merit. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding.").

Accordingly, the Court finds that the ALJ did not err in weighing Dr. Kenney's opinion, and Plaintiff's contentions to the contrary are not well-taken.

## VI.  CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 13**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**.  The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge